UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LERNER MASTER FUND, LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CHRISTOPHER PAIGE and<br>MICHELE PAIGE,<br><br>　　　　　　　　　Defendants. | Civil Action No. 1:10-cv-04235-AKH<br><br>ECF CASE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STAY OR DISMISS PROCEEDINGS ON ABSTENTION GROUNDS**

Dated: June 29, 2010                                       Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　/s/  Steven F. Molo
　　　　　　　　　　　　　　　　　　　　　Steven F. Molo (SM-1818)
Robert K. Kry                                              Nicole J. Coward (NC-1751)
MOLO LAMKEN LLP                                            Edward F. Daniels (ED-2061)
The Watergate, Suite 660                                   MOLO LAMKEN LLP
600 New Hampshire Ave., N.W.                               540 Madison Avenue
Washington, D.C. 20037                                     New York, NY 10022
(202) 556-2011 (telephone)                                 (212) 607-8160 (telephone)
(202) 556-2001 (facsimile)                                 (212) 607-8161 (facsimile)

　　　　*Attorneys for Defendants Christopher Paige and Michele Paige*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.   This Case and the Delaware Action Are "Parallel Proceedings" .........................................5

II.  The Governing Six-Factor Test Favors Abstention ...............................................7

CONCLUSION.....................................................................................................................15

EXHIBITS:

Declaration of Steven F. Molo

Verified Complaint in *Paige Capital Management, LLC v. Lerner Master Fund, LLC*, No. 5502-VCS (Del. Ch. filed May 18, 2010)..............................................................A

Summons with Notice in *Lerner Master Fund, LLC v. Paige* (N.Y. Sup. Ct. filed May 21, 2010) ...................................................................................B

Notice of Removal (filed May 25, 2010)............................................................................C

Defendant's Motion to Dismiss or Stay in *Paige Capital Management, LLC v. Lerner Master Fund, LLC*, No. 5502-VCS (Del. Ch. filed June 25, 2010) .........................D

Declaration of Christopher H. Paige

## TABLE OF AUTHORITIES

### CASES

*Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.*, 850 F. Supp. 176 (E.D.N.Y. 1994)..............6

*Carruthers v. Flaum*, 388 F. Supp. 2d 360 (S.D.N.Y. 2005)...........................................................6

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)....................4, 12

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) ......................................................... passim

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998).............................................................4

*Doré v. Wormley*, 690 F. Supp. 2d 176 (S.D.N.Y. 2010) ....................................................... passim

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) .................................10

*General Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78 (2d Cir. 1988)..................... passim

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160 (Del. 2002) ..................9

*Great South Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492
    (E.D.N.Y. 2002)........................................................................................................................5, 14

*JFK Family Ltd. P'ship v. Millbrae Natural Gas Dev. Fund 2005, L.P.*,
    21 Misc.3d 1102(A), 2008 WL 4308289 (N.Y. Sup. Ct. Sept. 16, 2008) ...............................11

*Lasker v. UBS Sec. LLC*, 614 F. Supp. 2d 345 (E.D.N.Y. 2008).....................................................6

*Lumbermens Mut. Cas. Co. v. Conn. Bank & Trust Co., N.A.*, 806 F.2d 411
    (2d Cir. 1986), *overruled on other grounds*, *Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)...............................................................................................................5, 8, 9

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281
    (Del. 1970) ..................................................................................................................................7

*Med. Self Care, Inc. ex rel. Dev. Specialists, Inc. v. NBC*, No. 01 Civ. 4191,
    2003 WL 1622181 (S.D.N.Y. Mar. 28, 2003) .........................................................................11

*Monumental Enters., Inc. v. Loab, Inc.*, No. 08 Civ 04230,
    2008 WL 5093603 (E.D.N.Y. Nov. 21, 2008).....................................................................5, 14

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ..........................4, 8, 10

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, No. 5502-VCS
    (Del. Ch. filed May 18, 2010)....................................................................................................1

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88
  (2d Cir. 2006) ................................................................................................................5

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356 (2d Cir. 1985) .........5, 9, 10, 12

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) ..........................................8

*Wash. Mut. Bank v. Law Office of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410
  (S.D.N.Y. 2008) ........................................................................................................8, 10

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .......................................3

*Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576 (Del. 1964) .............................................13

## STATUTES AND RULES

6 Del. Code § 17-111 ...............................................................................................1, 2, 3

6 Del. Code § 17-1101(d) ................................................................................................9

Del. Chancery R. 14 .......................................................................................................13

## OTHER AUTHORITIES

*Hedge Fund Redemptions and the Gate Provision*, Hedge Fund Law Blog
  (Sept. 29, 2008), http://www.hedgefundlawblog.com/hedge-fund-redemptions-
  and-the-gate-provision.html ..........................................................................................12

*Gate Provision*, Invetsopedia, http://www.investopedia.com/terms/g/gateprovision.asp .............12

Defendants Christopher and Michele Paige respectfully submit the following memorandum of law in support of their motion to stay or dismiss these proceedings on abstention grounds in light of a related case previously filed in the Delaware Chancery Court, *Paige Capital Management, LLC v. Lerner Master Fund, LLC*, No. 5502-VCS (Del. Ch. filed May 18, 2010).

## INTRODUCTION

This case arises out of a dispute between two hedge funds and their largest investor over the investor's right to withdraw from the funds. Because the proposed withdrawal is contrary to the plain terms of the Delaware partnership agreement governing one of the funds (as well as parallel terms in the agreement governing the other), the two funds and their investment manager sought a declaratory judgment from the Delaware Chancery Court confirming the parties' rights and obligations. That court has express jurisdiction to resolve disputes, like this one, over the proper construction of a Delaware partnership agreement. *See* 6 Del. Code § 17-111. Rather than participate in good faith in that Delaware litigation, the investor responded by bringing this action against the investment manager's principal officer and one of its employees in New York State court—an action later removed to this Court. Because the two cases involve related parties and arise out of substantially the same facts, well-settled principles indicate that this Court should either dismiss this case on abstention grounds or stay further proceedings pending resolution of the previously filed Delaware case.

## BACKGROUND[1]

Paige Opportunity Partners, L.P., is a hedge fund organized as a limited partnership under the laws of Delaware. Ex. A ¶ 3. Paige Opportunity Master Fund, Ltd., is an offshore fund organized under the laws of the Cayman Islands. *Id.* ¶ 4. Paige Capital Management, LLC, is the

---

[1] Except as otherwise indicated, the following facts are drawn from the verified complaint filed in the Delaware Chancery Court, attached as Exhibit A to the Declaration of Steven F. Molo.

investment manager for both funds, and Paige GP, LLC, is the Delaware fund's general partner. *Id.* ¶¶ 2, 5. Defendant Michele Paige is the investment manager's Chief Executive Officer and Portfolio Manager, as well as the managing member of Paige GP. *Id.* ¶ 6. And defendant Christopher Paige is the investment manager's General Counsel. Paige Decl. ¶ 2.

Plaintiff Lerner Master Fund, LLC, a Delaware limited liability company, is the funds' largest investor, having invested $40 million in October 2007. Ex. A ¶¶ 7, 12. In becoming an investor, Lerner executed, among other contracts, a Limited Partnership Agreement making it a limited partner of the Delaware fund. *Id.* ¶ 13. That agreement includes a "gate" provision limiting the amount Lerner can withdraw at any one time. Specifically, Section 8.02(b) provides:

> In all cases, if as of any withdrawal date, withdrawal requests are received that, when combined with all other withdrawal requests, would result in a withdrawal of more than 20% of the total value of the Partnership's net assets (the "Threshold Level"), the General Partner will reduce on a pro-rata basis the amounts requested to be withdrawn to such extent as is necessary to ensure that the Threshold Level is not exceeded and will carry forward the balance of withdrawal requests to the next earliest withdrawal date of the Partnership and, if necessary, for successive withdrawal dates until each request has been satisfied in full (the "Gate").

Ex. A ¶ 21. The offshore fund's governing documents contain a similar restriction. *Id.* ¶ 22. Thus, the agreements unambiguously prohibit Lerner—or any combination of investors—from withdrawing more than 20% of the total value of either fund's net assets on any withdrawal date.

Notwithstanding those clear provisions, Lerner informed the Paiges that it intended to withdraw its *entire* investment on October 31, 2010. Ex. A ¶ 31. Because that demand was contrary to the clear terms of the Delaware partnership agreement governing the parties' relations, the Paiges decided to seek a judicial declaration of their rights from the Delaware courts. Delaware law grants the Delaware Chancery Court jurisdiction over suits, like this one, seeking a declaration of rights and responsibilities of parties to a Delaware partnership agreement. *See* 6 Del. Code § 17-111. Accordingly, in a good-faith effort to resolve the parties' dispute, Paige

Capital Management, Paige GP, and the two Paige funds filed a declaratory judgment action in the Delaware Chancery Court on May 18, 2010. Ex. A.

Lerner responded by instituting an action against Michele and Christopher Paige in New York state court on May 21, 2010. *See* Summons with Notice, attached as Exhibit B. Instead of filing a complaint setting forth its allegations, however, Lerner filed a mere "summons with notice." *Id.* That document indicates that the "nature of the action is fraud and breach of fiduciary duty in connection with defendants' misrepresentations and omissions in their solicitation of funds from plaintiff for investment purposes, and defendants' subsequent misuse of plaintiff's funds," and recites that Lerner seeks $40 million in damages, but does not set forth any factual allegations supporting its claims. *Id.* at 1. As permitted by Second Circuit precedent, *see Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001), the Paiges removed that suit to this Court prior to the filing of a complaint on May 25, 2010. *See* Notice of Removal, attached as Exhibit C. To date, Lerner has not filed a complaint.

Nonetheless, on June 25, 2010, Lerner filed in the Delaware Chancery Court a motion to dismiss on *forum non conveniens* grounds or to stay that action in favor of this proceeding. *See* Motion to Dismiss or Stay, attached as Exhibit D. Lerner did not file a memorandum of law supporting that motion but indicated that it plans to do so at some future date. *See id.* Thus, the purported authority for Lerner's motion—like the basis for its claims here—remains unclear.

## ARGUMENT

This Court should either dismiss this action on abstention grounds or stay further proceedings pending resolution of the Delaware action. This case was filed in transparent retaliation for the filing of the Delaware action and is a plain example of unnecessary duplication of litigation across multiple forums. Although the basis for Lerner's fraud and breach of fiduciary duty

3

claims is unclear, Lerner has effectively conceded that the two cases are closely related by seeking a stay in the Delaware proceedings. The issues at the heart of both cases are matters of Delaware state law plainly better resolved by that State's courts. Finally, Lerner is free to assert its claims—to the extent it actually has any—as defenses or counterclaims in Delaware. Given those facts, this Court should defer to the Delaware proceedings and either dismiss or stay this case pending resolution of that matter.

Abstention pending resolution of state-court proceedings is appropriate where two conditions are met. First, the two actions must involve sufficiently similar parties and subject matter to be "parallel." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). Second, six factors, on balance, must favor abstention: "(1) the assumption by either court o[f] jurisdiction over *res* or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums and the progress of the federal court litigation; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *General Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); citations omitted). Those same six abstention factors apply, whether a defendant seeks dismissal or a stay. *See Moses H. Cone*, 460 U.S. at 27-28.

The Supreme Court has indicated that there is a presumption favoring continued exercise of federal jurisdiction notwithstanding concurrent state-court proceedings, and has characterized the six-factor test as requiring "exceptional circumstances." *Moses H. Cone*, 460 U.S. at 19. Despite that seemingly demanding phrasing, however, the Second Circuit and district courts

4

within its jurisdiction have routinely abstained under the *Cone* factors in circumstances not significantly different from those here. *See, e.g.*, *De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989); *General Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78 (2d Cir. 1988); *Lumbermens Mut. Cas. Co. v. Conn. Bank & Trust Co., N.A.*, 806 F.2d 411 (2d Cir. 1986), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356 (2d Cir. 1985); *Doré v. Wormley*, 690 F. Supp. 2d 176, 191-93 (S.D.N.Y. 2010); *Monumental Enters., Inc. v. Loab, Inc.*, No. 08 Civ 04230, 2008 WL 5093603, at *2-3 (E.D.N.Y. Nov. 21, 2008); *Great South Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 497-99 (E.D.N.Y. 2002). The Court should accordingly either dismiss these proceedings or stay them pending resolution of the Delaware case.

## I.   This Case and the Delaware Action Are "Parallel Proceedings"

The two cases at issue satisfy the threshold requirement for abstention because they are "parallel" actions involving substantially the same parties and issues. "For two actions to be considered parallel, the parties in the actions need not be the same . . . ." *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). Rather, they need only be "substantially the same, litigating substantially the same issues in both actions." *Id.* That standard is met here.

With respect to parties, the sole plaintiff here—Lerner Master Fund, LLC—is the sole defendant in Delaware. And the two individual defendants here are closely related to the four plaintiffs there: New York Defendant Michele Paige is Chief Executive Officer and Portfolio Manager of Delaware Plaintiff Paige Capital Management, LLC, while New York Defendant Christopher Paige is its General Counsel. Ex. A ¶ 6; Paige Decl. ¶ 2. Michele Paige is also the managing member of Delaware Plaintiff Paige GP, LLC. Ex. A ¶ 5. And Paige Capital Man-

5

agement and Paige GP are the investment manager of the two funds and the general partner of one fund respectively—the other two plaintiffs in Delaware. Ex. A ¶¶ 2-4. Those relationships are more than sufficient to make the parties "substantially the same." *See, e.g.*, *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 375-76 (S.D.N.Y. 2005) (one suit named partnership; other suit named individual partners); *Doré*, 690 F. Supp. 2d at 192 (one suit brought by individual; other suit brought by organization with which she was affiliated).

The subject matters of the two actions are also "substantially the same." Once again, strict identity is not required. "The fact that precisely the same claims are not made in the two proceedings, or that alternative forms of relief are sought in the two actions, does not mean the actions are not duplicative or parallel." *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.*, 850 F. Supp. 176, 184 (E.D.N.Y. 1994). "What matters is that the claims **concern the same events** and involve **sufficient overlap of subject matter**." *Id.* (emphasis added); *see also Lasker v. UBS Sec. LLC*, 614 F. Supp. 2d 345, 355 (E.D.N.Y. 2008). Lerner's summons with notice states the nature of the matter as "fraud and breach of fiduciary duty in connection with defendants' misrepresentations and omissions in their solicitation of funds from plaintiff for investment purposes, **and defendants' subsequent misuse of plaintiff's funds**," by which Lerner apparently means defendants' continued retention of its funds despite its withdrawal request. Ex. B (emphasis added). Moreover, the relief Lerner seeks here is, in substance, the same relief it could obtain from a favorable ruling in Delaware—the return of its $40 million investment. *See id.* Thus, although Lerner has attempted to recast the parties' dispute over withdrawal rights as tort claims, its allegations "concern the same events" and involve an "overlap of subject matter." *Bernstein*, 850 F. Supp. at 184.

The fact that Lerner has not yet filed a complaint makes it hard to discern the precise degree of overlap at this juncture. But this Court need not even reach that issue because Lerner has effectively conceded that the two cases are parallel. As noted, Lerner recently filed a motion in Delaware to stay those proceedings pending resolution of this case. *See* Ex. D. Delaware law, no less than federal law, requires substantial identity of parties and issues to justify a stay. *See McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970). Lerner's filing of that motion thus amounts to a concession that sufficient identity exists. On that basis alone, this Court may find the requisite substantial identity here.

## II.     The Governing Six-Factor Test Favors Abstention

The six *Cone* factors, on balance, clearly favor deferring to the Delaware litigation. Although the first two weigh slightly in favor of continuing, the remaining four all weigh strongly in favor of dismissal or a stay. And in numerous cases involving that precise configuration—the first two factors against but the last four in favor—courts in this circuit have granted stays or dismissals.

1. *Assumption of jurisdiction over res or property*.

This case does not involve *in rem* jurisdiction. Accordingly, the first factor weighs "slightly" against a stay. *Doré*, 690 F. Supp. 2d at 191.

2. *Inconvenience of the federal forum*.

Neither Delaware nor New York presents any significant advantages of convenience to the parties. Christopher and Michele Paige are residents of neither state; they reside in Pennsylvania. Ex. C ¶ 5. And all the business entities other than the offshore fund—including Lerner Master Fund, Paige Capital Management, Paige GP, and Paige Opportunity Partners—are organized under the laws of Delaware, although their principal places of business are in New York.

7

*See* Ex. A ¶¶ 2-5, 7.  Moreover, both Lerner and the Paige entities are represented in Delaware by local Delaware counsel, and thus neither faces any meaningful inconvenience in filing papers or appearing there.  Ex. A at 12; Ex. D at 2.  On those facts, neither New York nor Delaware can claim any real advantage in convenience.  *Cf. General Reinsurance*, 853 F.2d at 81 ("As to the convenience of the federal forum, . . . '[t]he insurance corporations involved here, doing business on a multi-state basis, can as easily litigate in New Jersey as in New York.' ").

Under Second Circuit precedent, where both forums are equally convenient, this factor is deemed to weigh against abstention.  *See Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999).  Here, however, the factor merits little weight.  Ultimately, this case turns on the proper construction of contract provisions in a partnership agreement.  The relevant evidence is overwhelmingly documentary and, in this day and age, can be produced as easily in Delaware as in New York.  In the unlikely event it becomes necessary to produce witnesses for trial, the relevant persons are all either parties to the suits or affiliated with them, and thus there are no concerns about limitations on the courts' subpoena authority.  In those circumstances, this factor merits very little weight in the overall balance.  *See Doré*, 690 F. Supp. 2d at 191 (noting that " 'the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case' " (quoting *Moses H. Cone*, 460 U.S. at 16)).

   3. *Avoidance of piecemeal litigation*.

The third factor—avoidance of piecemeal litigation—is "critical."  *Lumbermens*, 806 F.2d at 414.  " '[M]aintaining virtually identical suits in two forums . . . would waste judicial resources and invite duplicative effort.' "  *Doré*, 690 F. Supp. 2d at 192; *see also Wash. Mut. Bank v. Law Office of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410, 412 (S.D.N.Y. 2008) ("[J]udicial efficiency will be promoted by preventing needless duplication of time and resources

8

in simultaneous litigation."). "[T]he avoidance of piecemeal litigation," moreover, "should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Lumbermens*, 806 F.2d at 414. Finally, even when two actions "raise different issues" to some degree, this factor still favors abstention so long as the issues are "inextricably linked." *General Reinsurance*, 853 F.2d at 81; *De Cisneros*, 871 F.2d at 307-08; *see also Telesco*, 765 F.2d at 362 ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.").

Proceeding with this case while the Delaware action is pending would inevitably entail wasteful duplication of resources and effort. The issue in Delaware is whether the fund agreements' "gate" provisions bar Lerner's withdrawal. Ex. A. Lerner's proposed tort claims are "inextricably linked" to that issue. For example, Lerner's summons states that the matter concerns "breach of fiduciary duty in connection with . . . defendants' subsequent misuse of plaintiff's funds"—by which Lerner apparently means the continued retention of its investment despite its withdrawal request. Ex. B. But it is settled law that a Delaware partner's fiduciary duties may be modified or limited by the terms of the partnership agreement. *See* 6 Del. Code § 17-1101(d); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002). For that reason, "any claim of a breach of a fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners*, 817 A.2d at 170-71. Lerner's breach of fiduciary duty claim is thus necessarily "inextricably linked" with the Delaware contract claim because, to the extent the "gate" provision applies, it forecloses any claim for breach of fiduciary duty.

Lerner apparently also intends to allege "fraud . . . in connection with defendants' misrepresentations and omissions in their solicitation of funds." Ex. B. But that claim is also "inex-

9

tricably linked" to the Delaware suit.  If indeed Lerner was fraudulently induced to invest (an allegation whose factual basis remains a mystery), that could be alleged as a defense to the enforcement of the contract in Delaware.  Litigation of such issues in New York would thus duplicate effort expended in Delaware as well.

Once again, it bears repeating that Lerner has conceded the substantial overlap between the two actions by moving to stay the Delaware case in favor of this one.  Ex. D.  Having told the Delaware courts that these matters are similar enough to justify a stay, Lerner is in no position to claim otherwise now.  The third factor thus weighs strongly in favor of abstention.

    4. *Order of filing and progress of litigation*.

The order-of-filing factor also strongly favors the Delaware suit.  The Paige funds filed their declaratory judgment action in Delaware on May 18, 2010.  Ex. A.  Lerner responded by filing its summons in New York on May 21, 2010, *after* the Delaware suit had already been filed.  Ex. B.  Obviously, then, the Delaware case was filed first and should be given priority.  *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (noting the "well-settled principle favoring the forum wherein a suit was first filed"); *Washington Mutual*, 561 F. Supp. 2d at 412 (similar).

The Court must consider the "progress" of the two cases as well as their order of filing.  *General Reinsurance*, 853 F.2d at 81.  But that factor favors Delaware too.  There, the Paiges have at least filed a complaint setting forth their claims.  Ex. A.  Here, by contrast, Lerner has not even taken that basic step.  A less "progressed" federal case is hard to imagine.

Importantly, moreover, "'the ***vexatious or reactive nature*** of either the federal or the state litigation'" is critical to evaluating this factor.  *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*, 460 U.S. at 17 n.20) (emphasis added).  Lerner's New York action is "vexatious or reac-

10

tive" by any measure. This is not a situation where two actions were filed in separate courts for neutral and independent reasons. Rather, Lerner filed its incendiary summons **precisely because** of the Paiges' earlier filing of the Delaware action, and in blatant retaliation for that good-faith effort to obtain a judicial resolution of the parties' disagreement.

   5. *Whether state or federal law applies*.

Resolution of this dispute ultimately turns on Delaware law—another factor militating strongly in favor of abstention. Where state law governs, "the interests of comity are best served by waiting for the state court to speak first." *De Cisneros*, 871 F.2d at 309. "Such a deferral by the federal court guarantees that it will not misinterpret [state] law." *Id.*

The Delaware declaratory judgment action arises entirely under Delaware state law. *See* Ex. A at 10-11. That case concerns the proper construction and enforceability of the Delaware partnership agreement's "gate" provision—a paradigmatic state-law contract dispute that the Delaware court is plainly better positioned to adjudicate. *See ibid.* The action before this Court likewise focuses on state-law matters. Any breach of fiduciary duty claim would clearly be governed by Delaware law. *See JFK Family Ltd. P'ship v. Millbrae Natural Gas Dev. Fund 2005, L.P.*, 21 Misc.3d 1102(A), 2008 WL 4308289, *18 (N.Y. Sup. Ct. Sept. 16, 2008) ("Delaware Law applies to Plaintiffs' claims of breach of fiduciary duty because it is 'the laws of the jurisdiction under which a foreign limited partnership is organized . . . [that] govern its organization and internal affairs and the liability of its limited partners.'"); *cf. Med. Self Care, Inc. ex rel. Dev. Specialists, Inc. v. NBC*, No. 01 Civ. 4191, 2003 WL 1622181, at *7 (S.D.N.Y. Mar. 28, 2003). And any fraud claim may well be governed by Delaware law too, depending on the facts Lerner alleges when it decides to file a complaint. Moreover, as already explained, *see* pp. 8-10, *supra*, the proposed New York tort claims are inextricably tied to the Delaware contract claim

because the validity and enforceability of the gate provision under Delaware law provides a complete defense for the Paiges' refusal to return Lerner's investment.

As the Second Circuit has made clear, moreover, this factor weighs particularly strongly in favor of abstention where an action raises a "novel state law theory" that the State has a strong interest in adjudicating. *Telesco*, 765 F.2d at 363; *see also Colorado River*, 424 U.S. at 814 ("Abstention is . . . appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."). The "gate" provision at issue is common in partnership agreements of hedge funds organized under Delaware law. *See, e.g.*, *Hedge Fund Redemptions and the Gate Provision*, Hedge Fund Law Blog (Sept. 29, 2008), http://www.hedgefundlawblog.com/hedge-fund-redemptions-and-the-gate-provision.html; *Gate Provision*, Invetsopedia, http://www.investopedia.com/terms/g/gateprovision.asp. And the enforceability and proper construction of such provisions is a matter of increasing importance, as hedge fund misfortunes have led to more investor withdrawals. *See Hedge Fund Redemptions and the Gate Provision*, *supra*. Lerner's position, as far as the Paiges can discern, is that, although the gate provision by its terms applies, it should be disregarded because application in this context would not advance the purposes for which such provisions are normally included in hedge fund agreements. That is a "novel state law theory"—no Delaware court has ever recognized such an exception, which would significantly undermine the expectations of investors and managers of hedge funds organized under Delaware law. If that novel theory is to be introduced into Delaware law, that is a step that should be taken by the Delaware courts, not this one.

6. *Adequacy of state-court forum*.

The last factor also favors abstention because the Delaware Chancery Court is a more than adequate forum for Lerner's proposed claims. The Chancery Court would have ancillary jurisdiction over any money damages counterclaims. *See Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del. 1964). And, to the extent Lerner thinks it has claims against the Paiges individually, it could seek to add them as third-party defendants. *See* Del. Chancery R. 14.

Finally, it bears noting that Lerner did not initiate this action in federal court. Rather, it filed in state court, and the Paiges then removed the case. Ex. C. Thus, unlike typical cases where courts have refused to suspend federal proceedings in light of a concurrent state suit, granting the Paiges' motion would not deprive Lerner of a federal forum it voluntarily chose. Lerner can hardly complain about having to litigate in state rather than federal court where Lerner itself chose a state forum.

*Balancing the factors*.

The first two factors weigh slightly in favor of proceeding, while the last four weigh strongly in favor of dismissal or a stay. In those circumstances, it is well within this Court's discretion to defer to the Delaware proceedings. Indeed, courts in this circuit have routinely abstained when faced with precisely that lineup of factors.

In *De Cisneros*, for example, the Second Circuit noted that the first two factors "point toward exercise of federal jurisdiction" because there was no *res* and the two forums were equally convenient. 871 F.2d at 307. But the court nonetheless affirmed a stay because the last four factors pointed the other way: There was a serious risk of "piecemeal litigation" because the issues were "inextricably linked"; the state suit was filed first and there was little progress in the federal action; the dispute turned on state law; and the plaintiff could pursue her claims in

state court. *Id.* at 308-09. Given "the risk of piecemeal litigation and the fact that only negligence issues governed entirely by state law are raised," the factors "strongly favor[ed] abstention." *Id.* at 309. "Where such visible signs are present pointing so clearly towards abstention . . . it should come as no surprise to the bar that a district court declines to exercise its jurisdiction." *Id.* "[T]he interest of [the plaintiff]—and all parties—will be better served by abstention because consolidation in state court could lead to 'more efficient factfinding and more reasoned decision-making' on these ordinary garden variety issues of state law." *Id.*

Likewise, in the recent *Doré* decision, a court in this district dismissed even though the first two *Cone* factors "weigh[ed] against abstention." 690 F. Supp. 2d at 191. It did so because the other four factors favored dismissal: The two suits involved the "same fundamental claims" and thus the need for "avoidance of piecemeal litigation" was a factor of "significant weight"; the state suit was filed first and had progressed further; the cases turned on state law; and the claims could be litigated in state court. *Id.* at 191-93. Because "[f]actors three, four, five, and six weigh in favor of abstention, while factors one and two weigh slightly against abstention," the "balance of factors" favored dismissal. *Id.* at 193.

The *Great South Bay* court reached the same conclusion. There too, the first two factors "favor[ed] the retention of jurisdiction." 204 F. Supp. 2d at 497. But the other four favored dismissal: The suits presented overlapping issues; the state proceeding had progressed further; the dispute was governed by state law; and the claims could be pursued in state court. *Id.* at 498-99. The court accordingly dismissed. *Id.* at 499; *see also Monumental Enters.,* 2008 WL 5093603, at *2-3 (similar).

The balance of factors favors abstention here for the same reason. This case and the Delaware case present obvious potential for piecemeal litigation, as the proper construction and

14

enforceability of the gate provision lies at the heart of each case.  This action was filed after—and in retaliation for—the filing of the Delaware action.  The parties' dispute ultimately turns on questions of Delaware law, which the courts of that State are better positioned to address.  And Lerner is free to raise its tort claims as defenses or counterclaims in Delaware.  For all those reasons, the Court should dismiss this case on abstention grounds or stay further proceedings pending resolution of the Delaware case.

## CONCLUSION

Defendants' motion to stay or dismiss proceedings should be granted.

Dated:  June 29, 2010                                  Respectfully submitted,

                                                                 /s/  Steven F. Molo

Robert K. Kry                                          Steven F. Molo (SM-1818)
MOLO LAMKEN LLP                                        Nicole J. Coward (NC-1751)
The Watergate, Suite 660                               Edward F. Daniels (ED-2061)
600 New Hampshire Ave., N.W.                           MOLO LAMKEN LLP
Washington, D.C. 20037                                 540 Madison Avenue
(202) 556-2011 (telephone)                             New York, NY 10022
(202) 556-2001 (facsimile)                             (212) 607-8160 (telephone)
                                                                 (212) 607-8161 (facsimile)

*Attorneys for Defendants Christopher Paige and Michele Paige*